IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIDFIRST BANK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-cv-1902-B |
| | § | |
| STEVEN JOHNSON, JOHN McGHEE, | § | |
| ROBERT McGHEE, JOI McGHEE, and | § | |
| IEISHA McGHEE | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff MidFirst Bank's Motion for Default Judgment (<u>Doc. 15</u>), filed

August 26, 2022. For the reasons discussed below, the Court **GRANTS** Plaintiff's motion.

I.

BACKGROUND[1]

Plaintiff filed this foreclosure action against Defendants Steven Johnson, Ieshia McGhee,

John McGhee, Joi McGhee, and Robert McGhee—alleging that they have defaulted on a

mortgage agreement held by Plaintiff. *See* <u>Doc. 1</u>, Compl., ¶ 1.

By way of background, on July 28, 2008, Decedent Debra Ann McGhee ("Decedent"), a

single woman, executed a Note (the "Note") in an amount of $70,948.00, with an interest rate of

7.00% per annum[2] and a 4.00% late fee per missed payment. <u>Doc. 1-1</u>, Compl., Ex. A (Note).

The Note was originally made payable to Summit Mortgage Corporation ("Summit"). <u>Doc. 1</u>,

---

[1]     The Court draws the facts from Plaintiff's complaint (<u>Doc. 1</u>).

[2]      "Interest will be charged on unpaid principal from the date of disbursement of the loan
proceeds...until the full amount of principal has been paid." <u>Doc. 1-1</u>, Compl., Ex. A (Note).

Compl., ¶ 18; *see also* Doc. 1-1, Compl., Ex. A, ¶ 1. Along with the Note, Decedent executed a Deed of Trust (the "Security Instrument"), which granted Summit, its successors and assigns, a security interest in the real property known as 4003 Easter Avenue, Dallas, Texas 75216 (the "Property") and more particularly described as:

> LOT A-1, BLOCK D/5854, OF THE RESUBDIVISION OF LOTS 1 AND B ALL OF LOT 21, BLOCK D/5854 OF FORDHAM HEIGHTS ADDITION, AN ADDITION TO THE CITY OF DALLAS, DALLAS COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 24, PAGE 147, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

Doc. 1, Compl., ¶ 9. In addition, the Security Instrument named Mortgage Electronic Registration Services, Inc ("MERS") as "the beneficiary, solely as nominee for Summit and its successors and assigns. Subsequently, MERS, as nominee for Summit, transferred and assigned the Loan Agreement to [Plaintiff]." Doc. 1, Compl., ¶ 20. Plaintiff is the current holder of the Note. *Id.* ¶ 21. Under the Note's terms, Decedent, as the borrower, would default on the Note if she failed to make monthly payments. *Id.* ¶ 24; Doc. 1-1, Compl., Ex. A, ¶ 6(B). And in the case of default, the terms of the Security Instrument permit Plaintiff to foreclose upon the Property by exercising a power of sale. Doc. 1-1, Compl., Ex. B, ¶ 19 (FHA Deed of Trust).

On June 28, 2019, Decedent passed away. Doc. 1, Compl., ¶ 2. According to Plaintiff, no probate was opened for Decedent; thus, upon the Decedent's death, Decedent's heirs acquired all of Decedent's respective estates, including an undivided interest in the Property. *Id.* ¶ 3. Decedent's heirs include Decedent's surviving spouse and four children, all of which are named as Defendants.[3] Doc. 1, Compl., ¶ 3–8.

---

[3]    Decedent acquired the Property prior to her marriage to her surviving spouse. *See* Doc. 1-1, Compl., Ex. B, 1 ("The Grantor is [Decedent], A Single Person."). Therefore, the Property is Decedent's separate property. *See* Tex. Fam. Code § 3.001(1) ("A spouse's separate property consists of the property owned or claimed by the spouse before marriage."). When an individual dies intestate with a surviving spouse, both the surviving spouse and the decedent's children retain an interest in the separate property. *See* Tex. Est. Code

As of December 1, 2019, Defendants, as Decedent's heirs, defaulted on the loan agreement with Plaintiff. *Id.* ¶ 25. Accordingly, on March 24, 2020, Plaintiff provided a notice of default and an opportunity to cure the default to the Decedent's estate. *Id.* ¶ 25; *see also* Doc. 1-1, Compl., Ex. D (Notice of Default). But the default was not thereafter cured. Doc. 1, Compl., ¶ 26. Subsequently, Plaintiff served Decedent's estate with a notice of acceleration on the Note. *Id.*; *see also* Doc. 1-1, Compl., Ex. E (Notice of Acceleration of Loan Maturity). Nonetheless, Defendants, as Decedent's heirs, have not made payments on the Note. Doc. 1, Compl., ¶ 26.

Thus, Plaintiff now seeks a declaratory judgment recognizing and enforcing Plaintiff's statutory probate lien on the Property by authorizing Plaintiff to foreclose on Defendants' interest in the Property.[4] Doc. 1, Compl., ¶¶ 29, 31–32. In conjunction with this requested relief, Plaintiff brings a trespass-to-try-title claim, asking the Court to declare that all of Defendants' interest in the property is now vested in Plaintiff. *Id.* ¶ 41.

All Defendants were served on or before September 8, 2022.[5] On September 20, Defendant John McGhee filed an Answer (Doc. 7). And, on December 16, Plaintiff and Defendant Steven Johnson filed a Motion for Entry of Agreed Partial Judgment (Doc. 12). To

---

§ 201.002 (Separate Estate of the Intestate). Thus, Defendants—Decedent's surviving spouse and four children—all retain an interest in the Property, as it is separate property of Decedent.

[4]
      Pursuant to this relief, Plaintiff specifically seeks a declaratory judgment that its Security Instrument secures: (1) the outstanding balance of the Note; (2) pre-judgment interest; (3) post-judgment interest from the date of judgment until paid; (4) costs of court; and (5) attorneys' fees in an amount to be determined upon subsequent motion pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(i). Doc. 15, Pl.'s Mot. 4.

[5]
      Defendants Ieshia McGhee and Joi McGhee were both personally served by a process server on August 31, 2022. *See* Summons (Doc. 5) & Summons (Doc. 6). Defendant Steven Johnson's summons and complaint was left at his residence with a person of suitable age and discretion on September 6. *See* Summons (Doc. 11). Defendants Robert McGhee and John McGhee were personally served on September 7 and 8, respectively, at their respective correctional facilities. *See* Summons (Doc. 10) & Summons (Doc. 9).

date, Defendants Ieshia McGhee, Joi McGhee, and Robert McGhee have failed to answer or otherwise make an appearance in this case.[6] On January 20, 2023, the Court ordered Plaintiff to move for entry of default. Doc. 13, Order 2. On January 26, Plaintiff requested the clerk enter default (Doc. 14) and moved for default judgment (Doc. 15). Plaintiff served Defendants copies of the request and motion, and the clerk has since entered default. *See* Doc. 14, Request for Default, 4; Doc. 15, Pl.'s Mot., 5; Doc. 16, Clerk's Entry of Default. Defaulting Defendants failed to respond to Plaintiff's motion, and the time to do so has passed. Accordingly, the Court now considers the motion for default judgment.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of default judgments in federal court. According to Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b).

That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F.

---

[6] The Court hereinafter refers to Defendants Ieshia McGhee, Joi McGhee, and Robert McGhee as "Defaulting Defendants." The Defaulting Defendants collectively with Steven Johnson and John McGhee are referred to as "Defendants."

Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., id.* First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good-faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing so, the Court is to assume that due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002))). Normally damages are not to be awarded without a hearing or a demonstration by

detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

Applying this three-part analysis, the Court concludes that a default judgment is procedurally warranted and supported by a sufficient factual basis in Plaintiff's complaint. Accordingly, the Court awards Plaintiff the requested declaratory relief and will consider the issue of attorneys' fees upon a subsequent motion by Plaintiff.

A.     *Whether An Entry of Default Judgment Is Procedurally Warranted*

In this case, after reviewing Plaintiff's motion in light of the *Lindsey* factors, the Court finds that default judgment is procedurally warranted. First, Defaulting Defendants have not filed any responsive pleadings. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *see Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Defaulting Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default have been clearly established by Defaulting Defendants' failure to respond to the complaint and the entry of default by the Clerk. *Lindsey*, 161 F.3d at 893. As to the fourth and fifth *Lindsey* factors, Defaulting Defendants have failed to answer or otherwise respond to Plaintiff's complaint or motion since being served with the complaint over ten months ago. There

is no evidence that Defaulting Defendants' failure to respond is a result of a good-faith mistake, and their failure to respond "mitigat[es] the harshness of a default judgment." _John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc._, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013); _see also United States v. Washington_, 2017 WL 3394730, at *1–2 (N.D. Tex. Aug. 8, 2017) (entering default judgment against a defendant that failed to answer or otherwise respond to the plaintiff's complaint for two months). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defaulting Defendants. _Lindsey_, 161 F.3d at 893. Thus, Plaintiff has met the procedural requirements for default judgment.

B.   _Whether There Is a Sufficient Basis for Judgment in the Pleadings_

In light of the entry of default, Defaulting Defendants are deemed to have admitted the allegations set forth in Plaintiff's complaint. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for Plaintiff's claim for relief. _Nishimatsu Constr._, 515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555 (2007) (quoting _Conley v. Gibson_, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." _Id._ (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009).

_Wooten v. McDonald Transit Assocs., Inc._, 788 F.3d 490, 498 (5th Cir. 2015).

Here, Plaintiff seeks a declaratory judgment to enforce its rights to the Property. _Doc. 1_, Compl., ¶ 29. The Court construes Plaintiff's request for a declaratory judgment as a claim under

the federal Declaratory Judgment Act. *See Edionwe v. Bailey*, 860 F.3d 287, 294 n.2 (5th Cir. 2017). Below, the Court examines the sufficiency of Plaintiff's allegations to support Plaintiff's requested relief. Specifically, the Court first analyzes whether Plaintiff has sufficiently pled its right to enforce a statutory probate lien on the Property through foreclosure.[7] Thereafter, the Court turns to Plaintiff's request for attorneys' fees.

### 1.   Enforcement of Plaintiff's statutory probate lien through foreclosure

Plaintiff first seeks a declaratory judgment that it has a statutory probate lien on the Property and may enforce this lien through foreclosure. Doc. 1, Compl., ¶¶ 29–34.

Under Texas Estates Code §§ 101.001(b) and 101.051(b)(1), a "decedent's estate and its debts immediately pass to the decedent's heirs at law." *Ocwen Loan Servicing, LLC v. Deane*, 2017 WL 6816499, at *3 (N.D. Tex. Dec. 1, 2017). "The remedy of one holding an unpaid claim against the estate is to enforce a statutory lien against the property in the hands of the heirs, devisees, or legatees who receive estate property." *Id.* (citation omitted). Further, a mortgagee is permitted to seek foreclosure of a lien against real property when a borrower is in default on its obligations under a security instrument. *See Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013). A security instrument is a "deed of trust, mortgage, or other contract lien on an interest in real property." Tex. Prop. Code § 51.0001(6). A mortgagee includes the "grantee, beneficiary, owner, or holder of a security instrument . . . or if the security interest has been assigned of record, the last person to whom the security interest has been assigned of

---

[7]      Plaintiff also seeks a declaration that, pursuant to its trespass-to-try title claim, Defendants are divested of all interest in the Property and Defendants' interest has vested in Plaintiff. Doc. 1, Compl., ¶ 41. Because a trespass-to-try-title action "is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession," the Court's analysis regarding Plaintiff's rights to foreclose upon the Property necessarily covers Plaintiff's superior claim to the Property. *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.—Corpus Christi 1978, no writ.) (citations omitted).

record." *Id.* § 51.0001(4). A mortgagee seeking to foreclose on a security instrument must provide written notice by certified mail to the debtor stating that the debtor is in default under the security instrument and allow the debtor at least twenty days to cure the default prior to initiating foreclosure proceedings. *Id.* § 51.002(d).

To foreclose through a power of sale, a lender must show that: "(1) a debt exists; (2) the debt is secured by a lien created under art. XVI, § 50(a)(6) of the Texas Constitution; (3) the defendant is in default under the note and security instrument; and (4) the defendant received notice of default and acceleration." *Wells Fargo Bank, N.A. v. Taylor*, 2017 WL 6816591, at *4 (N.D. Tex. Dec. 5, 2017) (citing, inter alia, Tex. Prop. Code. § 51.002).

Here, Plaintiff has demonstrated that a debt exists by providing a copy of the Note. Doc. 1-1, Compl., Ex. A. Further, Plaintiff has shown that the debt is secured by a lien on the Property under Article 16, Section 50(a)(6) of the Texas Constitution by providing a copy of the Security Instrument. *Id.* at Ex. B.

Moreover, Plaintiff has demonstrated that Defaulting Defendants, as Decedent's heirs at law, are in default on the Note and the associated Security Instrument.

Specifically, Plaintiff has shown that it is the holder of the Note. *See* Doc. 1, Compl., ¶ 19–21. Plaintiff has provided evidence of Decedent's default on the Note by providing a calculation of the overdue payment, which was mailed to Decedent's estate. Doc. 1-1, Compl., Ex. D (Notice of Default). Further, Plaintiff has sufficiently alleged that Defaulting Defendants are heirs-at-law of Decedent. *See* Doc. 1, Compl., ¶¶ 3–8, 22; Doc. 1-1, Compl., Ex. B; *see also Supra* n.3. And because Decedent allegedly died intestate and with no probate administration ever opened, Defendants acquired Decedent's interest—and thus Decedent's debt—under Texas

estate law. *See* Doc. 1, Compl., ¶¶ 3, 22; *see also* Tex. Est. Code §§ 101.001(b), 101.051(b)(1). Accordingly, Plaintiff has demonstrated that Defaulting Defendants are in default.

Finally, Plaintiff has demonstrated that Defaulting Defendants, as Decedent's heirs at law, were sent notice of both the default and the acceleration by providing copies of the notice of default and the notice of intent to accelerate the debt. Doc. 1-1, Compl., Ex. D (Notice of Default); Ex. E (Notice of Acceleration of Loan Maturity).

Thus, Plaintiff has shown that: (1) a debt exists; (2) the debt is secured by a lien; (3) Defaulting Defendants are in default under the Note and Security Instrument; and (4) Defaulting Defendants were sent notices of default and acceleration on the debt. So, Plaintiff, as the mortgagee on the Note, is entitled to foreclose upon the Property at issue.

Further, as discussed above, Plaintiff has established that Defaulting Defendants, as heirs-at-law of Decedent, received an interest in the Property upon the death of Decedent. Moreover, Plaintiff has an unpaid claim against Decedent's estate, which may be enforced through a statutory probate lien. *See Ocwen Loan Servicing*, 2017 WL 6816499, at *3 (citation omitted).

Accordingly, the Court concludes that Plaintiff's allegations warrant a declaratory judgment that, pursuant to Plaintiff's statutory probate lien, it may foreclose upon Defaulting Defendants' interest in the Property.[8]

---

[8]    Because Plaintiff only seeks Default Judgment against Defaulting Defendants, the Court enters default judgment only as to the Defaulting Defendants' interest in the Property. This comports with the specific relief requested by Plaintiff in its motion for default judgment. *See* Doc. 15, Pl.'s Mot., 3–4.

2.   Attorneys' Fees

Next, Plaintiff requests reasonable and necessary attorneys' fees based on Texas Civil Practice and Remedies Code Chapter 38 and the terms of the documents at issue. Doc. 15, Pl.'s Mot. ¶ 12.

A prevailing party in a civil action may recover attorneys' fees from an individual or a corporation in a claim for a written contract. Tex. Civ. Prac. & Rem. Code § 38.001(8); see also Fed. R. Civ. P. 54(d)(2). While § 38.001(8) uses the term "may," "the Texas Supreme Court has declared that attorneys' fees under section 38.001 are not discretionary." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 n.3 (5th Cir. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)). This is true even in the default judgment context. *See* *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir. 1990) (upholding an award of attorneys' fees granted as part of a default judgment).

The Fifth Circuit has described the basic procedure and standard for determining attorneys' fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012)(quoting *Jimenez v. Wood Cty.*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The Johnson factors are: (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the

fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

Plaintiff attaches no supporting affidavit to its complaint to determine the attorneys' fees, nor does Plaintiff list costs related to this lawsuit. Instead, Plaintiff indicates it will move for such amounts after entry of judgment. Doc. 15, Pl.'s Mot. ¶ 12. The Court will thus consider attorneys' fees upon such a timely and properly supported motion.

## IV.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment (Doc. 15). Because Plaintiff only seeks Default Judgment against the Defaulting Defendants, the Court enters default judgment only with respect to the Defaulting Defendants—Ieshia McGhee, Joi McGhee, and Robert McGhee's interest in the Property. Accordingly, it is therefore:

**ORDERED, ADJUDGED AND DECREED** the Motion for Default Judgment is GRANTED in its entirety. It is further,

**ORDERED, ADJUDGED AND DECREED** that an event of default has occurred on that certain Note executed on or about July 28, 2004, by Decedent Debra McGhee ("Borrower") originally payable to Summit Mortgage Corporation ("Summit") in the principal amount of $70,948.00 (hereinafter "Note"). It is further,

**ORDERED, ADJUDGED AND DECREED** that that certain Deed of Trust dated July 28, 2004 executed by Borrower and recorded as Document No. 2997211 in the real property records of Dallas County, Texas (hereafter "Security Instrument"), provides that Plaintiff as the

current owner of the Note and mortgagee of the Security Instrument, in the event of a default on the obligations on the Note, with a first lien security interest on that certain real property commonly known as 4003 Easter Avenue, Dallas, Texas 75216 and more particularly described as follows:

> LOT A-1, BLOCK D/5854, OF THE RESUBDIVISION OF LOTS 1 AND B ALL OF LOT 21, BLOCK D/5854 OF FORDHAM HEIGHTS ADDITION, AN ADDITION TO THE CITY OF DALLAS, DALLAS COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 24, PAGE 147, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS.

(the "Property"). It is further,

**ORDERED, ADJUDGED AND DECREED** that Plaintiff is the current holder and owner of the Note and beneficiary of the Security Instrument. It is further,

**ORDERED, ADJUDGED AND DECREED** that the following are secured by the Security Instrument on the Property: the outstanding balance of the Note; prejudgment interest at the Note interest rate of 7.00%; post-judgment interest at the Note interest rate of 7.00%; and costs of court. It is further,

**ORDERED, ADJUDGED AND DECREED** that Plaintiff or its successors or assigns, may proceed with foreclosure on Defendants Joi McGhee, Robert McGhee, and Ieshia McGhee's interest in the Property as provided in the Security Instrument and section 51.002 of the Texas Property Code. It is further,

**ORDERED, ADJUDGED AND DECREED** that all foreclosure notices may be mailed to Defendants Joi McGhee, Robert McGhee, and Ieshia McGhee at 4003 Easter Avenue, Dallas, Texas 75216. It is further,

**ORDERED, ADJUDGED AND DECREED** that all costs are to be taxed against Defendants Joi McGhee, Robert McGhee, and Ieshia McGhee, not as a personal judgment but as a further obligation on the debt. It is further,

**ORDERED, ADJUDGED AND DECREED** that this Order fully resolves all claims between Plaintiff and Defendants Joi McGhee, Robert McGhee, and Ieshia McGhee. Plaintiff's claims against Defendant John McGhee remaining pending before the Court.

SO ORDERED.

Signed: July 11, 2023.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE